IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCRESIA MAYORGA SANTAMARIA, § <br> on behalf of DOE Children 1-3; and § <br> ORGANIZACION PARA EL FUTURO § <br> DE LOS ESTUDIANTES (OFE), § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> DALLAS INDEPENDENT SCHOOL § <br> DISTRICT; DALLAS INDEPENDENT § <br> SCHOOL DISTRICT BOARD OF § <br> TRUSTEES; MICHAEL HINOJOSA, § <br> SUPERINTENDENT OF THE DALLAS § <br> INDEPENDENT SCHOOL DISTRICT, § <br> in his official capacity; and § <br> TERESA PARKER, in her individual and § <br> official capacity as Principal of Preston § <br> Hollow Elementary School, § <br> § <br> Defendants. § | | Civil Action No. 3:06-CV-692-L |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion to Amend Findings of Fact and Conclusions of Law and Brief in Support, filed December 4, 2006, and Defendants' Motion to Amend Judgment and Brief in Support, filed December 4, 2006. Having carefully considered the motions, responses, replies, record and applicable law, the court **grants in part and denies in part** Defendants' Motion to Amend Findings of Fact and Conclusions of Law and **denies** Defendants' Motion to Amend Judgment.

**Memorandum Opinion and Order - Page 1**

**I.    Background**

In order to understand the court's ruling on the pending motions, a brief review of this case is in order. Plaintiffs are Lucresia Mayorga Santamaria ("Santamaria") on behalf of her three Latino children (Doe Children #1, #2 and #3) and Organizacion Para El Futuro de los Estudiantes ("OFE"), a not-for-profit organization of parents and their Latino children who attended Preston Hollow Elementary School during the 2005-2006 academic year (collectively, "Plaintiffs"). Defendants are Dallas Independent School District ("DISD"), DISD Board of Trustees ("Board of Trustees"), Dr. Michael Hinojosa in his official capacity as Superintendent of the DISD ("Superintendent Hinojosa"), and Teresa Parker, in her official capacity as Principal of Preston Hollow and in her individual capacity ("Principal Parker") (collectively "Defendants").

On April 18, 2006, Plaintiffs filed this lawsuit alleging that Defendants segregate and discriminate against Plaintiff Latino children attending Preston Hollow on the basis of race, color, or national origin, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VI of the Civil Rights Act of 1964. Specifically, Plaintiffs alleged that Defendants channel and segregate certain Latino students into English as a Second Language ("ESL") classes, even though the school had already determined that these particular Latino students were English-proficient, and therefore not in need of Bilingual or ESL instruction under state law. In the vernacular of academic testing and classification, the Latino students at issue in Plaintiffs' complaint are "non-Limited English Proficient," or "non-LEP." Limited English Proficient ("LEP") students, by contrast, are in need of Bilingual or ESL classes based on the results of state-mandated testing. Plaintiffs also alleged that Defendants deliberately channeled Anglo students with the same language needs as non-LEP Latinos to "General Education classes," also

known as "neighborhood classes," which were disproportionately Anglo as contrasted with the overall percentage of Anglos in the student population.[1] Plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages. On June 12, 2006, pursuant to Fed. R. Civ. P. 65(a)(2), the court advanced and consolidated the trial of this action on the merits with the hearing on Plaintiffs' request for preliminary injunctive relief.

The court held a bench trial on Plaintiffs' claims beginning August 9, 2006 and ending on August 21, 2006. After carefully considering the testimony of numerous witnesses,[2] the evidence admitted at trial, the record and applicable law, the court issued its Memorandum Opinion and Order on November 16, 2006 ("memorandum opinion"). The court determined that Principal Parker, acting in her individual capacity, had violated the rights of Plaintiffs to equal educational opportunities as guaranteed by the Fourteenth Amendment to the United States Constitution. *See* Mem. Op., Section III(B), Conclusions of Law, pp. 65-79. The court also determined that Plaintiffs failed to establish that Principal Parker violated Title VI of the Civil Rights Act of 1964.

Assessing damages against Principal Parker in her individual capacity, the court awarded nominal damages in the amount of $100 to Doe #1 and $100 to Doe #3, and awarded punitive

---

[1] During the 2005-2006 academic year, in First through Fourth Grade, the General Education classes at Preston Hollow had students of different ages; in Kindergarten, Fifth and Sixth Grade, they did not. General Education classes with students of different ages are referred to as "mixed-age classes."

[2] The following fact witnesses testified on behalf of Plaintiffs: Ms. Janet Leon (Fourth Grade Preston Hollow teacher), Ms. Terri Schill (Second and Third Grade Preston Hollow teacher), Ms. Sally Walsh (First Grade Preston Hollow teacher), Mr. Robert McElroy (Preston Hollow Assistant Principal), Ms. Santamaria, Ms. Ana Gonzalez (President of OFE and Latina parent of Latino Preston Hollow students), Ms. Veronica Perez (computer records clerk at Preston Hollow), Ms. Frances Martinez Guzman (proffered expert witness who had observed classes at Preston Hollow and interviewed teachers), and Dr. Richard R. Valencia (proffered expert witness on within-school discrimination). Defendants' witnesses included Superintendent Hinojosa, Dr. Gilda Alvarez-Evans (DISD's Assistant Superintendent for the Multi-Language Enrichment Program), Ms. Alice "Meg" Davis Bittner (Preston Hollow PTA President), Principal Parker, Ms. Ana Cranshaw (a Latina parent with children at Preston Hollow), and Mr. Joe Campos (Area Representative for the League of United Latin American Citizens).

**Memorandum Opinion and Order - Page 3**

damages in the amount of $10,000 to Doe #1 and $10,000 to Doe #3. The court also enjoined Defendant Parker from, among other things, violating the rights of Plaintiffs to equal educational opportunities as guaranteed by the Fourteenth Amendment to the United States Constitution, and from assigning any student to a class, or placing any student in a program, on account of that student's race or national origin. The court ordered Defendant Parker to integrate non-core curriculum instruction and to eliminate the racially identifiable hallways that exist at Preston Hollow Elementary School and identified by the court in its memorandum opinion.

As to Defendants DISD, the Board of Trustees, Superintendent Hinojosa and Principal Parker, in her official capacity, the court determined that Plaintiffs had failed to establish a violation of the Fourteenth Amendment or a violation of Title VI of the Civil Rights Act of 1964. On November 17, 2006, the court issued a separate judgment reflecting its decision.

On December 4, 2006, Defendants filed a Motion to Amend Findings of Fact and Conclusions of Law and Brief in Support, as well as a Motion to Amend Judgment and Brief in Support.[3] These motions have been fully briefed and are ripe for adjudication.

## II.     Defendants' Motion to Amend Findings of Fact and Conclusions of Law

### A.     Legal Standard

"Under Rule 52(b) of the Federal Rules of Civil Procedure, a party may petition the trial court to amend its findings of fact within ten days of the entry of judgment. The purpose of motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1209 (5th Cir. 1986). A

---

[3]The court is uncertain why Defendants DISD, Superintendent Hinojosa, the Board of Trustees and Principal Parker in her official capacity have re-injected themselves into this lawsuit by joining the pending motions to amend. The court adjudged them not liable for any unconstitutional acts.

motion to amend under Rule 52(b), however, should not be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits. *Id.* (citations omitted). Except for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record. To do otherwise would defeat the compelling interest in the finality of litigation. *Id.* at 1209-10 (citing *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 180 (3rd Cir. 1981) ("[T]he trial record must support whatever additional findings of fact or conclusions of law a party seeks under Rule 52(b) or it is certainly not entitled to them."), *cert. denied,* 456 U.S. 961 (1982)).

    **B.**    **Discussion**

        **1.**    **Motion to Amend Findings of Fact**

Defendants contend that on page 55 of the court's 108-page memorandum opinion, "the Court incorrectly found that Parker announced that Preston Hollow would no longer have mixed-age classes only after commencement of this litigation." Def. Mot. to Amend Findings of Fact and Conclusions of Law at 3. According to Defendants, Parker provided testimony that she made the decision to eliminate mixed-age classes in October 2005 and that "she communicated the decision to reduce the number of mixed-age classes to the PTA through both its board and regular meetings, to Vice-Principal McElroy, to teacher members of the CILT committee and to parents as well." *Id.* (citing Tr. Vol. VIII, pages 8-9 and Pl. Ex. 198).

Defendants are correct insofar as the timing of Defendant Parker's announcement to end mixed-age classes, namely, that it was before the filing of this lawsuit. Credible evidence of record shows that Defendant Parker announced her decision to end mixed-age classes at the February 3,

2006 PTA Meeting. *See* Pl. Ex. 198 (minutes of PTA meeting); *see also* Tr. Vol. III-A, page 41 (Assistant Principal McElroy's testimony that Defendant Parker communicated her plan to end mixed-age classes for the following year "during the second semester"). This lawsuit was filed April 18, 2006. Accordingly, her announcement preceded the filing of the lawsuit. In light of the foregoing, the court determines that Defendants' request for an amended finding has merit. The relevant portion of the memorandum opinion states:

> Finally, following commencement of this litigation, Principal Parker announced that during the 2006-2007 academic year, Preston Hollow would no longer have mixed-age classes. Although Assistant Principal McElroy exhorted her to end the mixed-age classes during the 2005-2006 school year, she did not announce that she would end these classes until after this lawsuit was filed.

*See* Mem. Op. at 55. This portion will be stricken in its entirety from the court's memorandum opinion.

In the final analysis, however, this change is of no moment and has no bearing on the court's conclusions of law or its Judgment in this case. In other words, the amendment does not change the uncontested and abundant evidence pertaining to Defendant Parker's post-litigation attempts to mask the true ethnic composition of Preston Hollow's classrooms. As detailed in the court's memorandum opinion:

> The court heard testimony from numerous witnesses regarding questionable actions taken by Principal Parker after this litigation was commenced. These actions, set forth below, all have one thing in common – *their practical effect was to give the classes at Preston Hollow the appearance of being less segregated than they were.* For example, Assistant Principal McElroy testified that the classroom assignments at Preston Hollow were "reshuffled" in anticipation of a visit by Frances Guzman (who, upon Plaintiffs' request, was permitted by the court over counsel for Defendants' vigorous objections to visit Preston Hollow for three (3) days to observe the classrooms). Specifically, he testified that Ms. Prudhomme's KC-Gen. class, which was predominantly Anglo, was redistributed after Principal Parker sent her away that day to attend a seminar of which she was not aware until the last minute. As part of the redistribution of students, several Anglo students from KC-Gen. were

>	sent to KA-ESL and KB-ESL. Assistant Principal McElroy also testified that certain Fifth Grade students were moved by Ms. Curtis, the 5B-ESL teacher, and that Ms. Pickens, the 5A-ESL teacher, expressed concerns about the redistribution. Defendants did not rebut this testimony.
>
>	Assistant Principal McElroy also testified that Principal Parker attempted to plan the first ever "Shadow Day" at Preston Hollow to coincide with Ms. Guzman's visit. On that day, children would spend the day visiting the grade-level they would be in the following year. He testified, however, that Shadow Day never took place. Defendants did not rebut this testimony.
>
>	Ms. Schill testified that Principal Parker altered the graduation ceremony at the end of the 2005-2006 academic year from the way it was conducted in prior years. Instead of having the students come to the stage by class, the children came to the stage by grade in alphabetical order. Defendants did not rebut this testimony.
>
>	With regard to CILT, Assistant Principal McElroy testified, as did the teachers, that Principal Parker asked members of CILT to sign a confidentiality agreement after litigation began in this case. Ms. Schill, a CILT member, testified that in the latter half of the 2005-2006 academic year, Principal Parker asked her to fill out a confidentiality agreement. Defendants did not rebut this testimony.

*See* Mem. Op. at 54-55 (emphasis in original, footnote omitted). Moreover, this amendment does not alter in any way the evidence set forth in the court's memorandum opinion (*see* pages 65-79) regarding Defendant Parker's other discriminatory actions in violation of the Fourteenth Amendment. In short, after apparently sifting through the record and the court's findings of fact with a fine-tooth comb, Defendants have come up with *one* misstatement regarding the timing of Defendant Parker's announcement to end mixed-age classes. At the end of the day, however, the unrebutted evidence of record shows that although Principal Parker announced her decision to end mixed-age classes at some time prior to commencement of this lawsuit, she nevertheless allowed mixed-age classes to continue until the following academic year, 2006-2007.

**Memorandum Opinion and Order - Page 7**

For the reasons stated above, Defendants' motion to amend the findings of fact should be allowed to the limited extent stated by the court. The amendment, however, does not alter the court's judgment in this case.

### 2. Motion to Amend Conclusions of Law

Defendants next contend that the court erroneously "attributed legal arguments to [them that] they did not make." Def. Mot. to Amend Findings of Fact and Conclusions of Law at 4. Specifically, Defendants request that the court "remove its reference to 'a separate but equal' argument being asserted by Defendants as such argument was never made." *Id.* at 6. In their reply brief, Defendants assert for the first time that the court should remove the reference to a "separate but equal" argument because it is an "advisory opinion." *See* Def. Reply to Pl. Resp. in Opp. to Def. Mot. to Amend Findings of Fact and Conclusion of Law at 4-5. The court will address these arguments in turn.

Defendants argue that the court is attributing an argument to them that they never made, namely, an argument that although separate from Anglo students, non-LEP minority students in ESL classes are receiving an equal educational opportunity as non-LEP Anglo students in General Education classrooms, because all classes at Preston Hollow follow DISD's mandated curriculum, and the same scope and sequence of instruction. Defendants' contention that they never made this argument is unavailing, as it clearly does not square with the record. While the court fully recognizes that Defendants never used the words "separate but equal," the record is replete with instances of thinly masked "separate but equal" arguments. The court finds troubling that Defendants would attempt to retreat and recharacterize their "separate but equal" arguments, and it insults the court's intelligence that they seek to reclassify these arguments in any other manner.

**Memorandum Opinion and Order - Page 8**

After presiding over the nine-day trial, after listening to Defendants' counsel's examination and cross-examination of several witnesses (*see supra* n.1), and after reviewing pleadings filed with the court, including Defendants' Proposed Findings of Fact and Conclusions of Law, it became all to apparent to the court that Defendants were urging the court to adopt a "separate but equal" argument. In other words, Defendants repeatedly sought to elicit testimony (and submitted filings to the court), which had as a common element the notion that because non-LEP minority students in ESL classes were receiving the same scope and sequence of DISD's mandatory curriculum as similarly situated (that is, non-LEP) Anglo children in neighborhood classes, that they were in a separate classroom was somehow unimportant. This same refrain was soundly rejected in *Brown v. Board of Education*, 347 U.S. 483, 495 (1954), where the Supreme Court declared that "[s]eparate educational facilities are inherently unequal."

As correctly pointed out by Plaintiffs in their response to Defendants' motion, "the record is replete with thinly veiled references by Defense Counsel to separate but equal." Pl. Resp. at 5. As an example, in arguing for directed verdict, counsel for Defendants stated:

> I think the record is very clear, even from teacher testimony, that no child was deprived of an equal education opportunity. I think the record is clear that [] Hispanic students receive the same curriculum and same scope and sequence as other students similarly situated.

*Id.* (citing Tr. vol. VI-B, 162:10-15). Plaintiffs have also correctly pointed out numerous instances in Defendants' Proposed Findings of Fact and Conclusions of Law where Defendants ask the court to adopt findings that non-LEP students in ESL-designated classes received the same instruction and quality of instruction as students in the General Education classes. *See id.* (citing Proposed Findings of Fact ## 175, 275, 276, 321, 322, 323, 324, 325, and 333).

**Memorandum Opinion and Order - Page 9**

Defendants also ignore that in questioning Ms. Janet Leon and Ms. Sally Walsh, two of the teachers who testified on behalf of Plaintiffs, counsel for Defendants sought to elicit testimony regarding the equal education being received by non-LEP minority students, albeit in a separate classroom from their Anglo counterparts. On recross-examination of Ms. Leon (who taught 4A-ESL during the 2005-2006 academic year), counsel for Defendants made the following inquiry regarding the education received by formerly LEP-students who had been exited from LEP, but remained in ESL classes instead of being placed in general education classes:

> Q. Ms. Leon, what's the difference in instruction for an exited LEP that is kept in an ESL-designated class?
>
> A. What is the – why would you keep them in there, is that what you're asking me?
>
> Q. No, no. My question is: What's the difference in instruction?
>
> A. Between an exited LEP student and a student that is still considered LEP, what is the difference in instruction?
>
> Q. Let me ask the question again. I'm sorry.
>
> A. I must be getting tired.
>
> Q. What is the difference in the instruction of an exited LEP student, that being a non-LEP, that is in an ESL designated class?
>
> A. I don't know that there is a lot of difference. I don't think there is.

Tr. Vol. II, at 207-08.

In cross-examining Ms. Walsh, who taught 1A-ESL during the 2005-2006 academic year, Defense counsel pursued a similar line of inquiry:

**Memorandum Opinion and Order - Page 10**

> Q. Now, with respect to pacing for the 2005-2006 school year, would you agree with me that you taught at the same pace as the mixed-age classes?
>
> A. Just about, yes.
>
> Q. Is it correct that you would visit with these mixed-age classes or teachers to make sure you guys were on the same page?
>
> A. Yes, we did.
>
> Q. Do you feel that the students in your 1A-ESL class were short-changed?
>
> A. No, I do not.
>
> Q. That is with respect to [] education; correct?
>
> A. Yes.
>
> \* \* \*
>
> Q. Would you agree with me that students in your 1A-ESL class during the 2005-2006 school year received an equal opportunity as those children in mixed-age classes?
>
> A. Yes, I [do].

Tr. Vol. IV-A, at 46. In sum, the court rejects Defendants' argument that it erred by attributing an argument to them they did not make. While Defendants did not use the terms "separate but equal" *in haec verba*, they most certainly urged upon the court the *Plessy*-type[4] argument that non-LEP minority students were receiving an equal education as their Anglo counterparts, just in a separate classroom. Post-*Brown*, however, Defendants' "no harm, no foul" argument has no place in

---

[4] *See Plessy v. Ferguson*, 163 U.S. 537, 550-52 (1896) (equality of treatment is accorded when the races are provided substantially equal facilities, even though these facilities be separate). The doctrine of "separate but equal" announced in *Plessy* was rejected in *Brown v. Board of Education*, 347 U.S. 483, 495 (1954), where the Supreme Court declared that "in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal." In so ruling, the Court explicitly stated that "[a]ny language in *Plessy v. Ferguson* contrary to this finding is rejected." *Id.* at 494-95.

**Memorandum Opinion and Order - Page 11**

constitutional jurisprudence. The court need not re-cite the authority from its memorandum opinion. *See* Mem. Op. at 77-79.

In their Reply, Defendants argue for the first time that the court's characterization of Defendants' argument as reminiscent of "separate but equal" is an "advisory opinion," and thus outside the court's discretion. *See* Def. Reply to Pl. Resp. in Opp. to Def. Mot. to Amend Findings of Fact and Conclusion of Law at 4-5. Matters raised for the first time in a reply brief are not considered by the court, and are deemed waived. *See Wallace v. County of Comal*, 400 F.3d 284, 292 (5th Cir. 2005) (and cases cited therein). Accordingly, this argument is not even properly before the court.

Even considering this argument, the court finds it without merit. The crux of Defendants' argument is that the court, having concluded that DISD, Superintendent Hinojosa, the Board of Trustees and Principal Parker in her official capacity were not liable to Plaintiffs, "was without discretion to then aggregate these defendants together in its rebuke of Parker, in her personal capacity." Def. Reply to Pl. Resp. in Opp. to Def. Mot. to Amend Findings of Fact and Conclusion of Law at 5. Defendants in this case relied upon a common defense, namely, that no constitutional violations took place regarding the manner in which Principal Parker assigned schoolchildren to classrooms at Preston Hollow. By virtue of Defendants' united front, and to extinguish all possible claims, the court had no alternative but to confront the issue of whether non-LEP schoolchildren assigned to ESL classes received an equal education as similarly situated Anglo students in mixed-age or general education classes, since they both received the same DISD-mandated scope and sequence of instruction. In other words, this was an argument Defendants used to defeat Plaintiffs' claim that Defendants denied them equal protection of the laws. It was incumbent upon the court

**Memorandum Opinion and Order - Page 12**

to address all issues joined by the parties. Unlike an advisory opinion, the court, in rejecting Defendants' "separate but equal" argument, was not making a hypothetical nonbinding statement, but was addressing a legal issue that goes to the crux of arguments raised and advanced by Defendants.

In short, Defendants have failed to convincingly argue that the court's conclusions of law contain manifest error. Thus, Defendants' motion to amend the conclusions of law will be denied.

## III.   Defendants' Motion to Amend Judgment

### A.   Legal Standard

"Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted). Such motions may not be used to relitigate issues that were resolved to the movant's dissatisfaction. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989). A Rule 59 motion may not be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to entry of judgment. *See generally* 11 C. WRIGHT, A. MILLER & M. KANE § 2810.1 at 127-28 (2d ed. 1995); *see also Simon*, 891 F.2d at 1159. With respect to newly discovered evidence, a court may not grant such a motion unless the movant establishes: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the alleged facts are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Resources, Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). In exercising this discretion, a

district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id*. With this balance in mind, the Fifth Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

### B.     Discussion

Defendants contend that the court "committed a manifest error of law by awarding punitive damages against Defendant Teresa Parker in an amount one hundred times the amount of nominal damages awarded[.]" Def. Mot. to Amend Judgment at 2. In their reply, Defendants clarify that their "motion to amend judgment is based upon the disparity prong of the [*BMW v.*] *Gore* test, not the reprehensibility prong[.]" Def. Reply to Pl. Resp. in Opp. to Def. Mot. to Amend Judgment at 3.[5] Defendants also argue that the court "abused its discretion by awarding punitive damages without reviewing evidence regarding Parker's financial ability to pay the damages so awarded." Def. Mot. to Amend Judgment at 7-8. The court will consider these arguments in turn.

As already stated, the court awarded nominal damages in the amount of $100 to Doe #1 and $100 to Doe #3, and awarded punitive damages in the amount of $10,000 to Doe #1 and $10,000 to Doe #3. In assessing the amount of punitive damages, the court relied on Supreme Court and Fifth Circuit precedent, including *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559 (1996), and *Williams v. Kaufman County*, 352 F.3d 994, 1014-15 (5th Cir. 2003), which, among other things, affirmed the district court's decision to award $15,000 per plaintiff in punitive damages and $100 per plaintiff

---

[5] Once again, raising it for the first time in their reply, Defendants reiterate the argument raised in reply to Plaintiffs' response to their motion to amend findings of fact and conclusions of law, namely, that the court committed a manifest error of law when it attributed the "separate but equal" argument to them. *See* Def. Reply to Pl. Resp. in Opp. to Def. Mot. to Amend Judgment at 9. The court sees no reasons to address this issue further, and rejects it for all the reasons previously set forth. *See supra* at 8-13.

**Memorandum Opinion and Order - Page 14**

in nominal damages. *See Williams v. Kaufman County*, 2002 WL 519814, at *11 & n.10 (N.D. Tex. March 29, 2002). Under the guiding principles set forth in these cases, the court carefully considered: "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm suffered and the damage award; and (3) the difference between the damages awarded in this case and comparable cases." *See* Mem. Op. at 102-03 n.52 (citing *BMW v. Gore*, 517 U.S. at 575). As to the second factor, the court relied upon the Fifth Circuit's opinion in *Williams*, where it held that "any punitive damages-to-*compensatory* damages 'ratio analysis' cannot be applied effectively in cases where only *nominal* damages have been awarded[.]" *See id.* (citing *Williams*, 352 F.3d at 1016 (emphasis in original)). In so holding, the Fifth Circuit reasoned that "[b]ecause actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all." *Williams*, 352 F.3d at 1016.

According to Defendants, the Fifth Circuit's holding with regard to the second prong of the *BMW v. Gore* test is wrong. In support of that argument, Defendants cite a pre-*Williams* Supreme Court case. *See* Mot. for Leave to Amend at 2 (citing *State Farm Mutual Automobile Insur. Co. v. Campbell*, 583 U.S. 408, 425 (2003)). The court is well aware of the *State Farm* decision, and does not read it as broadly as suggested by Defendants. Even more importantly, the Fifth Circuit decision in *Williams* was issued on December 9, 2003, more than eight months after *State Farm* was decided. The Fifth Circuit specifically considered, and rejected, the *same* argument raised by Defendants:

> The Supreme Court's recent revisit of the *Gore* factors in *State Farm Mutual Automobile Insurance Company v. Campbell* does not alter our conclusion here. 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). *Campbell* reviewed jury-awarded compensatory damages of $1 million and punitive damages of $145 million; and although the Court stated that extreme ratios should be presumptively invalid, it discussed the constitutionality of punitive damages vis-a-vis *compensatory* damages

**Memorandum Opinion and Order - Page 15**

> awarded by juries. *See id.* at 1521, 1524. As the instant case concerns the ratio between punitive and *nominal* damages, *Campbell*'s discussion of the proper ratio between punitive and compensatory damages is inapposite to our consideration today.

*Williams*, 352 F.3d at 1016 n.76 (original emphasis).  Defendants' view that *State Farm* changed the landscape with regard to punitive damages assessment is clearly not a view shared by the Fifth Circuit where nominal damages are awarded, and not compensatory damages.  Defendants' attempt to argue a point already rejected by the Fifth Circuit is not well-founded, as the Fifth Circuit in *Williams* spoke with unmistakable clarity on this issue.

Defendants also argue that the court "abused its discretion by awarding punitive damages without reviewing evidence regarding Parker's financial ability to pay the damages so awarded." Def. Mot. to Amend Judgment at 7-8.  While it is true that a tortfeasor's wealth is admissible to calculate the amount of punitive damages awarded (*see City of Newport v. Fact Concert, Inc.*, 517 U.S. 247, 270 (1981)), such evidence is not a prerequisite to an award of punitive damages. Moreover, the court noted the lack of evidence regarding Defendant Parker's net worth:

> The issue of punitive damages was not adequately briefed by the parties.  Plaintiffs included one sentence in their Proposed Findings of Fact and Conclusion of Law. *See* Proposed Conclusion of Law ¶ 200 ("Punitive damages can be assessed here because there is evidence that Defendant Parker's conduct involved reckless and callous indifference to the federally protected rights of others.") (citations omitted). Defendants did not address punitive damages at all.  Plaintiffs failed to incorporate into the record any suggestion of what an appropriate punitive damage award would be in this case, and the court has no evidence regarding Principal Parker's net worth. The court therefore uses its discretion to set what it believes is the appropriate amount of punitive damages, considering the egregious nature of Principal Parker's conduct in this case.

*See* Mem. Op. at 102-03 n.52.  To be blunt, it was precisely the lack of such evidence which caused the court to assess only $10,000 in punitive damages to Doe #1 and $10,000 in punitive damages to Doe #3, a low amount when one considers the nature of the constitutional violations at issue, the

**Memorandum Opinion and Order - Page 16**

extended time period over which they occurred, and the copious evidence of a deliberate attempt to conceal the segregation from the public eye and the court. Indeed, the flip side of the coin can be argued, that is, that the punitive damages awarded Doe #1 and Doe #3 are too low when one considers the purposes of such damages – to punish those who act with evil intent, or with reckless or callous indifference to another's constitutional rights, and to deter others from engaging in such illegal conduct. The court simply exercised its measured discretion and made an award of punitive damages based on existing precedent.

The court simply does not understand Defendants' "disparity" argument. The argument seems to be that the court awarded Doe #1 and Doe #3, respectively, one hundred times the amount of nominal damages awarded, which in Defendants' estimation is, *ipso facto*, unreasonable considering the disparity between the nominal damages and the punitive damages. The Fifth Circuit's apt statement in *Williams*, however, bears repeating: "[b]ecause actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all." *See Williams*, 352 F.3d at 1016. Moreover, in *Williams*, a § 1983 lawsuit involving strip-searches of individuals absent particularized reasonable suspicion or probable cause, the Fifth Circuit specifically upheld an award of $15,000 in punitive damages to each plaintiff where the nominal damages awarded were only $100 to each plaintiff, stating, "[b]ased on our review of the case law and our consideration of the evidence weighed by the district court, we conclude that $15,000 per plaintiff is not unreasonable in light of the violations that took place." *Id.*

As contrasted to *Williams*, where the amount of punitive damages awarded and upheld on appeal was one hundred and fifty times the amount of nominal damages awarded, in this case it is

one hundred times the award of nominal damages as to Doe #1 and Doe #3, respectively. If the court were to adopt Defendants' argument on punitive damages when there has been a clear and unequivocal violation of a long-established constitutional right, and the violation of that right cannot be vindicated by an award of $10,000 each to two schoolchildren, the utility of the doctrine of punitive damages is not worth the change from two cents. Moreover, as previously stated, the court was careful to use its measured discretion in coming up with the amount of the punitive damages award. The court can think of no constitutional violations more damaging and indelible than those based on immutable characteristics, such as race and ethnicity at issue in this case. All in all, the court concludes that the award of punitive damages was reasonable. Defendants have not even come close to satisfying the legal standard for amending a judgment. *See* Fed. R. Civ. P. 59(e). For these reasons and those set forth fully above, Defendants' Motion to Amend Judgement will be denied.

## IV. Conclusion

For the reasons set forth herein, the court **grants in part** Defendants' Motion to Amend Findings of Fact and Conclusions of Law to the limited extent stated below. The court **grants** Defendants' Motion to Amend Findings of Fact and Conclusions of Law insofar as it **strikes** from its November 16, 2006, memorandum opinion the following two sentences:

> Finally, following commencement of this litigation, Principal Parker announced that during the 2006-2007 academic year, Preston Hollow would no longer have mixed-age classes. Although Assistant Principal McElroy exhorted her to end the mixed-age classes during the 2005-2006 school year, she did not announce that she would end these classes until after this lawsuit was filed.

*See* Mem. Op. at 55. As the above-quoted language has been deleted, it constitutes **no** part of the court's memorandum opinion issued on November 16, 2006. The court **denies in all other aspects**

Defendants' Motion to Amend Findings of Fact and Conclusions of Law.  Further, for the reasons herein stated, the court **denies** Defendants' Motion to Amend Judgment.

**It is so ordered** this 10th day of April, 2007.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 19**